LEE, C.J.,
for the Court:
¶ 1. David McSwain was injured when he fell thirty-two feet inside a nuclear power plant condenser while working at Grand Gulf Nuclear Station in Claiborne County, Mississippi. McSwain filed a premises-liability suit in the Claiborne County Circuit Court. The trial court granted summary judgment in favor of Grand Gulf, finding Grand Gulf was immune from liability. McSwain now appeals asserting the trial court erred in granting summary judgment.
FACTS
¶ 2. On October 7, 2008, McSwain was injured when he fell inside a nuclear-power-plant condenser at Grand Gulf. McSwain had been hired by Stone & Webster Construction (S & W) to perform maintenance at Grand Gulf during a scheduled power outage. S & W is a contracting-services company that provides employees to perform maintenance at nuclear power plants throughout the country. S & W was hired by Entergy Operations Inc. (EOI) to provide workers for the maintenance. EOI holds the license for nuclear-power-plant operation and is in charge of the overall operation of Grand Gulf on behalf of Grand Gulfs owners, System Energy Resources Inc. and South Mississippi Electric Power Association (SMEPA).
¶ 3. On the day of the injury, McSwain and the other crew members were doing maintenance in a nuclear condenser. All the crew members doing work that day were hired through contractors. The work in the condensers only occurs when the power plant is shut down for refueling. During a refueling outage, spent nuclear fuel is replaced, and other maintenance is performed. This process is difficult or impossible to perform while the plant is operational. These outages occurred approximately every eighteen months. This particular outage lasted from July 1, 2008, through November 30, 2008. McSwain was erecting scaffolding inside one of the nuclear condensers when he stepped backwards and fell onto the false floor thirty-two feet below. McSwain was wearing a scissor-type anchor device as part of his fall-protection equipment, but the device did not stop his fall. McSwain is an experienced journeyman carpenter familiar with nuclear-power-plant maintenance.
¶ 4. In his complaint, McSwain asserted System Energy and SMEPA failed to provide a safe work environment and were negligent in allowing him to use a defective scissors wire hook, harness, and lanyard. System Energy and SMEPA moved for summary judgment asserting they were immune from liability because McSwain was an employee of S & W, an independent contractor. The trial court agreed and granted summary judgment.
¶ 5. McSwain now appeals, asserting summary judgment was inappropriate for the following reasons: (1) EOI, operating on behalf of System Energy and SMEPA, retained substantial de facto control over the premises and work to be performed by S & W; (2) EOI failed to provide a reasonably safe work environment and/or failed to warn of any danger; and (3) Mississippi Code Annotated section 11-1-66 (Supp. 2011), which gives premises owners immunity from civil liability in certain circumstances, does not apply.
STANDARD OF REVIEW
¶ 6. In reviewing a trial court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there *106 is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
DISCUSSION
I. CONTROL OVER PREMISES AND WORK
¶ 7. McSwain asserts that, despite a contractual provision to the contrary, he was not treated as an independent contractor by EOI. He asserts he was treated as a business invitee. Thus, he argues summary judgment was inappropriate because EOI’s actions at least created a fact question for a jury to determine his employment status.
¶ 8. The contract between EOI and S & W states that, unless a specific exception applies, S & W’s employment status is as follows:
[T]he Contractor [ (S & W) ] shall maintain the status of an independent contractor with the sole authority to control and direct the performance of the details of the Work being rendered by its employees and with responsibility for determining the safety of its employees performing Work and with Entergy Operations being interested only in the results obtained.
“Under most situations, the contract language is of utmost import in this regard, but if the plaintiff can show that, notwithstanding the contract, the premises ‘owner maintained substantial de facto control over those features of the work out of which the injury arose,’ the premises owner’s duty is resurrected.” Nelson v. Sanderson Farms, Inc., 969 So.2d 45, 50 (¶ 9) (Miss.Ct.App.2006) (quoting Magee v. Transcon. Gas Pipe Line Corp., 551 So.2d 182,186 (Miss.1989)).
¶ 9. The Mississippi Supreme Court has defined an independent contractor as “a person who contracts with another to do something for him but who is not controlled by the other nor is subject to the other’s right to control with respect to his physical conduct in the performance of the undertaking.” Heirs & Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist., 743 So.2d 311, 316 (¶ 28) (Miss.1999). The factors to consider are:
1) whether the principal master has the power to terminate the contract at will;
2) whether he has the power to fix the price in payment for the work or vitally controls the manner and time of payment;
3) whether he furnishes the means and appliances for the work;
4) whether he has control of the premises;
5) whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output;
6) whether he has the right to prescribe and furnish the details of the kind and character of the work to be done;
7) whether he has the right to supervise and inspect the work during the course of employment;
8) whether he has the right to direct the details of the manner in which the work is to be done;
*107 9) whether he has the right to employ and discharge the sub-employees and to fix their compensation; and
10) whether he is obliged to pay the wages of said employees.
Id. at 316-17 (¶ 29) (quoting Kisner v. Jackson, 159 Miss. 424, 428-29, 132 So. 90, 91 (1931)).
¶ 10. McSwain cites to several provisions of the contract as evidence that EOI failed to submit control to S & W. For example, the contract states: all work must comply with EOI’s safety program and quality-assurance manual; EOI had the authority to stop work if its requirements, such as those for documentation, were not fulfilled; EOI’s contract manager had the authority to order minor changes in the work; EOI provided equipment such as radios, pager, tools, and safety equipment; EOI could use S & W’s equipment; and the contract could be terminated by EOI at any time for any reason.
¶ 11. For these reasons, McSwain maintains he was a business invitee rather than an independent contractor. “An invitee is defined as a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Hudson v. Courtesy Motors, Inc., 794 So.2d 999, 1003 (¶ 9) (Miss.2001). The duty owed by a premises owner to a business invitee is the “duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition.” Jones v. James Reeves Contractors, Inc., 701 So.2d 774, 782 (Miss.1997). However, “the owner/occupier is not an insurer of the invitee’s safety, and he is not liable for injuries which are not dangerous or which are, or should be known to the business invitee.” Id.
¶ 12. Upon reviewing the contract, affidavits, and deposition testimony, we cannot find EOI retained control such as to void S & W’s status as an independent contractor. Under the contract, S & W assumed full responsibility for the conditions pertaining to the work, including hiring, paying, and training employees, as well as the details and methods of the work. McSwain was a regular employee of S & W and was only assigned to work at Grand Gulf temporarily during the scheduled maintenance. McSwain was a journeyman carpenter, a specific union craft S & W used to ensure its employees were qualified. Carpentry is not part of EOI’s regular business, and EOI did not employ any carpenters for normal operations. "While some of the tools used by S & W employees were supplied by EOI, EOI only supplied tools specifically requested by S & W, and the decision about which tools to use was made by S & W.
¶ 13. Johnny Peterson, a maintenance site manager for S & W, submitted an affidavit on behalf of S & W. Peterson explained S & W is a contracting-services company that provides employees to perform maintenance at nuclear power plants throughout the country. Peterson stated S & W’s policy was to only hire union carpenters because union carpenters are journeyman carpenters, and all journeyman carpenters are “reasonably presumed to know how to use the tools of the trade, including fall-protection equipment and associated anchor devices.” Peterson stated S & W decided what tools and fall protection equipment would be used during the maintenance, and EOI left such decisions to S & W because of S & W’s expertise in the field. He stated it was S & W’s responsibility to ensure McSwain was properly trained on how to use the anchor device in question, and it was McSwain’s responsibility to inspect the device prior to use.
¶ 14. Ed Rogers also submitted an affidavit. Rogers was the superintendent of *108 maintenance support during the 2008 outage. He was a liaison between EOI and the independent contractors that performed tasks at Grand Gulf during outages. Rogers stated EOI relied on S & W to make decisions regarding how the maintenance was performed, who did the work, and what tools were used. According to Rogers, the scissor-type anchor device McSwain was using at the time of the accident was purchased a few years prior at S & W’s request, and this was the only reason EOI had this device in stock.
¶ 15. After reviewing the matter de novo as required by our standard of review for summary-judgment cases, we find S & W and McSwain, as an employee of S & W, were independent contractors. EOI maintained some rights through the contract, but we find these related to the general operation of the nuclear plant and not specifically to the maintenance work. Further, even if McSwain was considered a business invitee, EOI still would not be liable because EOI did not have a duty to warn of dangers “which are, or should be known to the business invitee.” It is undisputed McSwain was an experienced journeyman carpenter; he had worked in numerous nuclear facilities; he had been trained on fall-protection equipment; and he had used a similar scissor-anchor device on numerous occasions. Further, S & W’s deposition revealed it was familiar with the hazards of working inside a nuclear condenser, and the law states that “[a]ny knowledge of dangers on the part of the independent contractor is deemed to be known by the contractor’s employees as well.” Nelson, 969 So.2d at 51 (¶ 13).
¶ 16. Not only did the contract between EOI and S & W state that S & W was an independent contractor, we find the actions of the parties also reflect such a relationship. This issue is without merit.
II. FAILURE TO WARN OF DANGER
III. IMMUNITY FROM PREMISES LIABILITY
¶ 17. Next, McSwain argues EOI failed to provide a safe work environment and to warn of any dangerous conditions at the plant. Having found S & W and McSwain were independent contractors, this issue is moot, as EOI had no duty to warn of dangers known or assumed by S & W.
¶ 18. Mississippi Code Annotated section 11-1-66, entitled “Immunity of premise[s] owners from civil liability in certain circumstances,” states: “No owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the independent contractor’s employees resulting from dangers of which the contractor knew or reasonably should have known.” Likewise, Mississippi common law protects business owners from injuries sustained by independent contractors on the work site. Miss. Chem. Corp. v. Rogers, 368 So.2d 220, 222 (Miss.1979).
¶ 19. An exception exists to the general rule that “[a]n employer is under a duty to provide an independent contractor with a reasonably safe work environment or give warning of danger.” Grammar v. Dollar, 911 So.2d 619, 622 (¶ 7) (Miss.Ct.App.2005) (citing Miss. Chem. Corp., 368 So.2d at 222). “An employer is relieved of the duty of informing an independent contractor of a danger at the work site if the independent contractor knows of that danger.” Id. The owner of a business is under no duty to protect an independent contractor “against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair.” Id. at 622 (¶ 8) (citing *109 Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267, 271 (Miss.1970)). The policy behind this exception is that “[t]he party in the best position to eliminate a dangerous condition should be burdened with that responsibility.” Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss.1994).
¶ 20. To establish negligence under Mississippi law, McSwain must prove EOI owed a duty to him, and it breached that duty. Tucker, 743 So.2d at 315 (¶ 23). S & W’s expertise was in nuclear-plant maintenance, and it assumed the risks of the work. Further, its employees, including McSwain, were experienced journeyman carpenters, and McSwain was familiar with the safety equipment being used. We find McSwain has failed to show a duty owed by EOI. As we have found S & W and its employees were independent contractors, we find section 11-1-66 and Mississippi common law applicable. Thus, EOI had no duty to warn of dangers inherent in the job. This issue is without merit, and the trial court’s grant of summary judgment is affirmed.
¶ 21. THE JUDGMENT OF THE CLAIBORNE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.