# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00018-COA

AGUSTIN MENDEZ LOPEZ, CONSERVATOR          APPELLANT
OF THE PERSON AND ESTATE OF JUAN
MENDEZ

v.

BELLAMARE DEVELOPMENT LLC AND          APPELLEES
SANDEEP K. SETHI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2017 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NATHAN HENRY ELMORE |
| | BRYAN J. O'CONNOR JR. |
| | BRYAN J. O'CONNOR |
| ATTORNEYS FOR APPELLEES: | DONNA MARIE MEEHAN |
| | JUSTIN RONALD GLENN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/13/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE, TINDELL AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. This is an appeal from the Lincoln County Circuit Court's grant of summary judgment under Mississippi Code Annotated section 11-1-66 (Rev. 2014). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Bellamare Development LLC is a holding company that was founded in 2005 and is owned by Sandeep K. Sethi. It contracted with Certified Construction Company "to do all the work and provide all the materials, tools, machinery and supervision necessary for the

completion of construction" of an 80-unit Holiday Inn in Brookhaven, Mississippi. Several months later, Certified Construction Company subcontracted with Varnell Framing Contractors to perform a portion of that work. The contracted work included rough carpentry, sheathing, roofing, and the installation of windows. To accomplish its obligation, Varnell Framing Contractors hired several laborers, including Juan Mendez.

¶3.     Anthony Varnell—owner of Varnell Framing Contractors—and Mendez were at the Holiday Inn construction site in June 2012. Mendez was new to the job and had no training, but under Varnell's supervision he went to the building's third floor. Varnell remained on the ground and operated a telehandler that elevated an unsecured plywood box containing tools to the third-floor window where Mendez was located. Then Mendez, wearing a safety harness and lanyard but without an anchor point or other fall-protection system in place, entered the elevated box to collect the tools. This process had been completed without incident by Varnell's employees several times before—in fact, a later Occupational Safety and Health Administration investigation indicated that Varnell "had established a procedure with his employees that the employees would walk up to the upper floors and the first employee at the hoisted box was to enter the box and retrieve the tools."

¶4.     But this time, the plywood box did not remain on the telehandler forks. It slid from the forks and, with Mendez inside, plummeted to the ground. Mendez fractured his spine and is now a quadriplegic.

¶5.     Mendez reported the accident to the Mississippi Workers' Compensation Commission in September 2012. A workers' compensation action was filed against Certified Construction

2

Company because Varnell Framing Contractors had let their workers' compensation insurance lapse.[1] He also filed a complaint in the United States District Court for the Southern District of Mississippi asserting diversity jurisdiction, which was voluntarily dismissed. Mendez then filed a complaint and amended complaint in the Lincoln County Circuit Court in July 2014, naming several defendants: Sethi, Bellamare Development, Varnell, Varnell Framing Contractors, Jackie's International, Certified Hospitality Corporation, Puckett Machinery Company, and Specialty Glass & Door Company. Certified Construction Company was not named a defendant in this circuit-court action.

¶6.     Mendez moved for a default judgment against Varnell and Varnell Framing Contractors in December 2015 because "neither [party] [had] filed an [a]ppearance in this matter." The circuit court granted his motion. Jackie's International, Certified Hospitality Corporation, Puckett Machinery Company, and Specialty Glass & Door Company were all later dismissed from this suit. Only Sethi and Bellamare Development remained as defendants.

¶7.     After several years of discovery, in August 2017, Sethi and Bellamare Development moved for summary judgment. The circuit court heard oral argument and granted their motion in October 2017. The court, however, did not address the discoverability of confidential documents from Bank First requested by Mendez, which the court had received over one year earlier. Then, in December 2017, the circuit court ruled on the document discovery and denied Mendez's motion for production of the Bank First documents. Mendez

---

[1] Although we do not have evidence of this workers' compensation action's outcome, representations were made that it had been pursued. These were not rebutted.

moved for reconsideration of summary judgment, which the court also denied.

¶8.     He now appeals to this Court, arguing that (1) section 11-1-66 immunity does not apply; (2) the circuit court erred when it failed to address Mendez's negligence claims; (3) summary judgment was improper; and (4) the circuit court abused its discretion when it determined that the Bank First records were not discoverable.[2]

**STANDARD OF REVIEW**

¶9.     We review a trial court's grant of summary judgment de novo. *Pigg v. Express Hotel Partners LLC*, 991 So. 2d 1197, 1199 (¶4) (Miss. 2008). "The movant is entitled to summary judgment if there is no genuine issue of material fact." *Griffin v. Grenada Youth League*, 230 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2017). "But the mere existence of disputed facts does not preclude summary judgment: 'The focal point of our standard for summary judgment is on *material facts*,' by which we mean those facts '*that matter in an outcome determinative sense*.'" *Id.* (quoting *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 801 (Miss. 1994)). "The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Id.* (quoting *Sanders v. Advanced Neuromodulation Sys. Inc.*, 44 So. 3d 960, 965 (¶11) (Miss. 2010)).

¶10.    "The evidence must be viewed in the light most favorable to the party opposing the motion." *Adams v. Hughes*, 191 So. 3d 1236, 1239 (¶6) (Miss. 2016). Furthermore, "[t]he party opposing the motion must be diligent and, by allegations or denials, must set forth

---

[2] We have consolidated Mendez's issues for clarity.

4

specific facts showing there are genuine issues for trial." *Porter v. Grand Casino of Miss. Inc.*, 181 So. 3d 980, 983 (¶4) (Miss. 2016).

## DISCUSSION

### I. Does section 11-1-66 immunity apply?

¶11. In its summary-judgment order, the circuit court found "that Bellamare Development, LLC was the owner, occupant, lessee, or managing agent of a construction project to build a Holiday Inn Express . . . ." The court further found that "Sethi was the managing member of Bellamare Development." It also noted that "the owner or occupier is under no duty to protect an independent contractor or its employees against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair." The court concluded that because Mendez "was unequivocally an employee of" Varnell Framing and because Varnell "clearly knew or should have known that to use the lift in the manner it was used . . . created a dangerous condition," section 11-1-66 immunity applied.

¶12. Now before this Court, Mendez argues that the appellees did not produce competent evidence to show that Sethi and Bellamare Development owned the construction site property at the time of Mendez's injury and that the appellees did not prove that Varnell knew or reasonably should have known about the telehandler's dangers. Therefore, he asserts that the circuit erred and that the immunity provided by section 11-1-66 does not apply.

¶13. Section 11-1-66 states that "[n]o owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the

5

independent contractor's employees resulting from dangers of which the contractor knew or reasonably should have known." For the statute to be applicable, therefore, the circuit court must have found that (A) Sethi and Bellamare Development were the owners, occupants, lessees, or managing agents of the property; and (B) Varnell knew or reasonably should have known about the telehandler's dangers. If the circuit court found both elements were met without dispute of material fact, then immunity applies.

¶14. We find that the circuit court did not err when it determined that (A) Sethi and Bellamare Development were the owners, occupants, lessees, or managing agents of the construction site at the time of Mendez's injury and (B) Varnell knew or reasonably should have known about the dangers of accessing an unsecured plywood box held by a telehandler from the third floor of a construction site. There is no genuine dispute as to those material facts. We therefore affirm the circuit court's finding that section 11-1-66 immunity applies to the case at hand. And therefore, both Sethi and Bellamare Development are immune from civil liability for Mendez's injuries. Our holding is detailed below.

**A.** **Were Sethi and Bellamare Development the owners, occupants, lessees, or managing agents of the construction site at the time of Mendez's injury?**

¶15. In its summary-judgment order, the circuit court found that "Bellamare Development, LLC was the owner, occupant, lessee, or managing agent of [the Holiday Inn] construction project" and that "Sethi was the managing member of Bellamare Development." But Mendez argues that neither Sethi nor Bellamare Development produced competent evidence to indicate Bellamare Development's ownership—although Mendez does not specify who

6

might be the owner, occupant, lessee, or managing agent of the property. The appellees direct this Court to the Lincoln County land records and the records from First Guaranty Bank to show ownership.

¶16.    The following deeds are contained in the record:

(1)    Lenore Heidemann conveyed the property to S.L. Sethi and Raksha Sethi by deed in January 2001;

(2)    Monica S. Harrgill and Ray Harrgill conveyed their interest in the property to S.L. Sethi and Raksha Sethi by quitclaim deed in January 2001;

(3)    S.L. Sethi and Raksha Sethi conveyed the property to Sandeep K. Sethi by warranty deed in June 2006;

(4)    Sandeep K. Sethi conveyed the property to Certified Hospitality Corporation by warranty deed in July 2008; and

(5)    Sandeep K. Sethi conveyed the property to Bellamare Development, LLC by warranty deed in April 2012.

¶17.    In addition to the deeds, the records from First Guaranty Bank support Sethi and Bellamare Development's status as owners, occupants, lessees, or managing agents because the bank treated them as such. Furthermore, the contractual documents support that status. The record shows that the circuit court based its determination on all of this evidence. Furthermore, we note that in order for the statute to apply, one does not need to be the owner of the property. Rather, one could instead be the occupant, lessee, or managing agent. The record before us indicates that both Sethi and Bellamare Development qualify under this broad umbrella that is this component of the statute.

**B.    Should Varnell have known or did he know about the telehandler's dangers?**

7

¶18. Next, Mendez asserts that it was not proven that Varnell knew or should have known about the telehandler's dangers.

¶19. In Mississippi, "[t]he general rule is that a premises owner owes a duty to an independent contractor and the latter's employees to furnish a reasonably safe place to work or give warning of danger." *Saranthus v. Health Mgmt. Assocs. Inc.*, 56 So. 3d 1274, 1276 (¶10) (Miss. Ct. App. 2011) (quotation marks omitted) (quoting *Miss. Chem. Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979)). But "the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert," *id*., "knew or reasonably should have known." Miss. Code Ann. § 11-1-66.

¶20. Mendez moved for a default judgment against the independent contractor, Varnell, and his company, Varnell Framing Contractors, in December 2015 because "neither [party] [had] filed an Appearance in this matter." The court granted the motion. Varnell did not testify in this case. But the record indicates that Varnell created the danger when he "established a procedure with his employees that the employees would walk up to the upper floors and the first employee at the hoisted box was to enter the box and retrieve the tools." Additionally, an experienced independent contractor, like Varnell, would know that placing heavy tools in a plywood box, then placing that box unsecured on a telehandler, then using the telehandler to elevate the box three stories high, then instructing an employee to climb into that unsecured box is dangerous. Therefore, we find that the circuit court's determination that Varnell reasonably should have known or knew about the telehandler's dangers proper and not an issue of material fact.

## II. Did the circuit court err when it failed to address Mendez's negligence claims?

¶21. Mendez asserts that the circuit court erred when it failed to address his claims that (A) Sethi and Bellamare Development were negligent in supplying the telehandler; and (B) Sethi and Bellamare Development were negligent in failing to hire a competent general contractor.

¶22. As we discussed above, section 11-1-66 immunity applies here, meaning that Sethi and Bellamare Development are not liable for Mendez's injuries that resulted from dangers of which Varnell knew or reasonably should have known. *E.g.*, *Tanner v. Roseburg Forest Prods. S. LP*, 185 So. 3d 1062, 1065 (¶12) (Miss. Ct. App. 2016) ("Under section 11-1-66, since . . . an independent contractor[] knew of the danger, then . . . the premises owner, was relieved of any duty to [the independent contractor]."). And the circuit court found as much. Moreover, beyond our statutory law, "Mississippi common law protects business owners from injuries sustained by independent contractors on the work site." *McSwain v. Sys. Energy Res. Inc.*, 97 So. 3d 102, 108 (¶18) (Miss. Ct. App. 2012). Mendez's negligence claim in his brief before this Court deals primarily with control of the construction site. He asserts, essentially, that Sethi exercised extraordinary control over the supplying and use of the telehandler. But the circuit court did, in fact, address these control claims:

> The [c]ourt further finds that the ability of the contractor to avoid injury where he knows that a dangerous condition exists does not depend on his control over the manner in which the work is being performed or his reason for being on the premises. *Stokes v. Emerson Elec. Co.*, 217 F. 3d 353 (5th Cir. 2000) (applying Mississippi law). In this regard, the [c]ourt finds that the evidence, especially the sworn deposition testimony of Antonio Hernandez, who was Plaintiff's co-worker hired by Varnell at the same time Mendez was hired, is overwhelming evidence that Varnell and only Varnell controlled all aspects of work performed by the Plaintiff, Juan Mendez. Equally, the [c]ourt finds that

9

the evidence is overwhelming that Mr. Sethi did not control the premises.

¶23. We too note that the evidence indicates that Sethi did not supply or control the use of the telehandler or other aspects of the construction site. Robert Hamm, a former employee of Certified Construction Company, testified that Sethi had only "okayed" the rental of the telehandler. Antonio Hernandez stated multiple times in his deposition that Varnell, not Sethi, controlled his work at the construction site:

> Q. The guys you were working with, Mr. Hernandez, Mr. Tony [Varnell] would tell you guys what to do; right?
>
> A. Oh, yes.
>
> . . . .
>
> Q. These two other guys, Mr. Hernandez, do you remember if they were Hispanic gentlemen or a white guy or an Indian guy?
>
> . . . .
>
> A. They were black.
>
> . . . .
>
> Q. Did you ever at any time, Mr. Hernandez, see a gentleman, an Indian gentleman named Sethi at the Holiday Inn Brookhaven?
>
> . . . . .
>
> [A.] Indian? No.

¶24. We find that Mendez's issue here is without merit, and that there is no issue of material fact.

¶25. And although Mendez asserts that Sethi and Bellamare Development were negligent in failing to hire a competent general contractor for a commercial construction project, he

10

admits that "there are no reported Mississippi decisions on this . . . claim." Nonetheless, he argues that "without this cause of action, Mississippi's purported worker safety laws would have an adverse disparate impact on workers sustaining total and permanent disabling injuries. Under Mississippi workers['] compensation law, injured workers receive indemnity . . . benefits only for the first 450 weeks post-occurrence."

¶26. Public policy arguments such as these are "better suited for the Legislature to address rather than this Court." *Wooten v. Miss. Farm Bureau Ins. Co.*, 924 So. 2d 519, 523 (¶14) (Miss. 2006). And because "[i]t is well settled under Mississippi caselaw that failure to cite any authority is a procedural bar, and a reviewing court is under no obligation to consider the assignment," *In re Estate of Forrest*, 165 So. 3d 548, 550 (¶7) (Miss. Ct. App. 2015), we decline to consider this issue.

### III.    Was summary judgment proper?

¶27. Mendez asserts that the circuit court failed to address his negligence claims, thereby making summary judgment improper. This Court "reviews a trial court's grant or denial of summary judgment de novo." *Collins v. City of Newton*, 240 So. 3d 1211, 1216 (¶11) (Miss. 2018). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Finally, "the evidence must be viewed in the light most favorable to the nonmoving party." *Anderson v. Ladner*, 198 So. 3d 381, 386 (¶21) (Miss. Ct. App. 2016).

11

¶28. As discussed above, section 11-1-66 immunity applies to Mendez's claims. And his novel negligence claims are without merit. Our de novo review of the record indicates that there is no genuine issue as to any material fact and that Sethi and Bellamare Development were entitled to a judgment as a matter of law. Thus, we affirm the circuit court's judgment.

### IV.  Did the circuit court abuse its discretion when it determined that the Bank First records were not discoverable?

¶29. Finally, Mendez avers that the Bank First records would "almost certainly show payments by Defendants to Varnell . . . and to other contractors and suppliers . . . ." He makes this argument to assert, again, that he has a negligence claim against both Sethi and Bellamare Development because one or both controlled intimate aspects of the construction site. He asserts that the circuit court abused its discretion when it determined that the records were not discoverable.

¶30. "Circuit courts are afforded broad discretion in discovery matters, and this Court will not overturn a circuit court's decision unless there is an abuse of discretion." *Elmore v. Dixie Pipeline Co.*, 245 So. 3d 500, 503 (¶10) (Miss. Ct. App. 2017). After the circuit court heard oral argument and granted summary judgment without having first ruled on the discoverability of confidential documents from Bank First, the court denied Mendez's motion to release the Bank First documents in December 2017. In its order denying the motion, the circuit court found "that during the instant litigation that the [c]ourt reviewed all documents and found said documents not to be discoverable in this matter."

¶31. We find that the circuit court did not abuse its discretion in determining that the Bank First records were not discoverable. Moreover, even if the circuit court had abused its

12

discretion, this error was harmless. We have already addressed Mendez's negligence claim and noted that section 11-1-66 immunity applies. Any documents that might have shown payment or control would be immaterial or irrelevant and would not better that claim. Determining that the Bank First records were discoverable would not lead to relevant or material evidence because they would not show negligence of Sethi or Bellamare in how Varnell used the telehandler to hoist supplies. Furthermore, as immunity applies here, such documents would not provide relevant, material, or admissible evidence. This issue is without merit.

## CONCLUSION

¶32.    We affirm the circuit court's judgment and find that (1) section 11-1-66 immunity applies; (2) the circuit court properly addressed Mendez's negligence claims against Sethi and Bellamare; (3) summary judgment was proper; and (4) the circuit court did not abuse its discretion when it determined that the Bank First records were not discoverable.

¶33.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.  J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

13